Case 2:22-cv-00055 Document 16 Filed on 10/19/22 in TXSD Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
October 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CYNTHIA MARTINEZ GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00055 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Cynthia Garcia ("Plaintiff") seeks judicial review of a final adverse decision by the Acting Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") pursuant to 42 U.S.C. § 405(g). Plaintiff's main concerns are whether the Administrative Law Judge ("ALJ") improperly substituted her own opinion about Plaintiff's manipulative limitations and whether the ALJ properly found the state agency medical consultants' opinions persuasive when additional evidence presented may have changed their opinions as to Plaintiff's residual functional capacity. (Doc. No. 12, pp. 2–3.) Plaintiff requests the Court vacate the ALJ's decision and remand this matter to develop additional medical opinion evidence.[1]  *Id.* at 13.

This social security appeal has been referred to the undersigned for memorandum and recommendation. On June 22, 2022, Plaintiff filed a brief in support of her claim. (Doc. No. 12). On July 25, 2022, the Commissioner filed a response. (Doc. No. 14.) After review of the parties' briefing, the record, and the relevant law, and for the reasons discussed below, the

---

[1] Plaintiff suggests other possible outcome options, but the question to be decided is whether the Commissioner's decision should be upheld, not to determine if Plaintiff is disabled. *See infra* Section B.

undersigned recommends the decision of the Commissioner be affirmed and this case be dismissed.

### A. *Jurisdiction.*

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

### B. *Standard of review.*

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the decision applied the proper legal standard. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citations and internal quotations omitted). This means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Further, in applying this standard, "'[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.'" *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Rather, the court must scrutinize the record to determine whether substantial evidence is present. *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.").

"If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed." *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL

4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (citations omitted). The reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To qualify for disability insurance benefits or supplemental security income, "a claimant must suffer from a disability." *Id.* A disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled for the purposes of disability insurance and supplemental security income, and thus entitled to disability benefits, the ALJ employs a five-step approach, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)); 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof lies with the claimant on the first four steps, and at the fifth step, the burden shifts to the Commissioner, who must show that, in light of claimant's residual functional capacity ("RFC"), claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). The ALJ need not continue the analysis should, at any step, the Commissioner finds that the claimant is or is not disabled. *See Copeland*, 771 F.3d at 923.

Residual functional capacity (RFC), which is determined between the third and fourth steps, is the most a claimant can do despite their limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Perez*, 415 F.3d at 461–62. In determining a claimant's RFC, the ALJ must consider

all relevant medical and other evidence, including statements by the claimant and their family members regarding the limitations that result from the claimant's symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The plaintiff is responsible for providing the evidence used to make a finding about RFC. *Id.* "[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012); *Ripley v. Chater*, 67 F.3d 552, 447 (5th Cir. 1995). The ALJ must articulate how persuasive he or she finds each of the opinions in the record and explain his or her conclusions regarding the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

When determining whether a claimant can perform other relevant work at the fifth step, an ALJ may rely upon a vocational expert's testimony, provided that the record reflects an adequate basis for doing so. *Carey*, 230 F.3d at 145–47. The issue at step five is whether the ALJ's hypothetical question to the vocational expert reasonably incorporates the disabilities recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). "A vocational expert is called to testify because of his familiarity with job requirements and working conditions" and may rely on his expertise to arrive at the conclusions he gives to the ALJ. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

### C. Procedural background.

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 1, 2020. (Doc. No. 10-4, pp. 3, 12, 22–23, 25, 36, 46–47; Doc. No. 10-10, pp. 3–16). Plaintiff's claims were initially denied on June 4, 2020 and again denied upon reconsideration on August 28, 2020. (Doc. No. 10-3, p. 12.) Subsequently, Plaintiff requested a hearing before an ALJ; that hearing was held on July 26, 2021. *Id.*

Plaintiff, who was represented by counsel, testified via telephone and under oath regarding her disability. (Doc. No. 10-3, pp. 35–36.) Elizabeth Clem, a vocational expert, also testified regarding Plaintiff's ability to complete hypothetical tasks and perform related employment duties. *Id.* at 50–54.

Based on vocational expert testimony, the ALJ concluded that Plaintiff could perform her past relevant work and other work. (Doc. No. 10-3, pp. 24-26.) And, on August 23, 2021, the ALJ found Plaintiff "not disabled" pursuant to §§ 216(i) and 223(d) of the SSA and, therefore, not entitled to disability benefits and supplemental security income. (Doc. No. 10-3, p. 27.)

On January 19, 2022, the Appeals Council denied Plaintiff's requested review, finding "no reason" to review the ALJ's decision. (Doc. No. 10-3, p. 2.)

On March 17, 2022, Plaintiff timely filed this action for judicial review of the Commissioner's final decision. (Doc. No. 1.) Plaintiff prays that the Court: (1) reverse the decision of the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) and find Plaintiff disabled and entitled to disability insurance benefits, and supplemental security income under the Social Security Act; or (2) vacate the decision of the ALJ and remand this matter for medical opinion evidence as to the effect of the Plaintiff's manipulative limitations upon her ability to perform her past work or other work and for a reassessment of the weight to be given to medical opinion evidence. (Doc. No. 12, p. 13.)

### D. *The July 26, 2021 ALJ hearing.*

On July 26, 2021, Plaintiff appeared via telephone for a hearing before the ALJ. (Doc. No. 10-3, pp. 33–55.) Plaintiff alleged that she has been unable to work since June 15, 2017 because of her disability. (Doc. Nos. 10-4, p. 3; Doc. No. 10-10). At the time of this alleged disability onset date, Plaintiff was 48 years old. (Doc. No. 10-3, p. 25.) Plaintiff stated she is

right-handed and has a twelfth-grade education. (Doc. Nos. 10-3, p. 25, 43; 10-10, p. 10; 10-11, p. 22.) The basis for Plaintiff's disability claim is back pain, diabetes, anxiety, depression, diabetic neuropathy, coughing (reflux), sciatic pain, and dyslexia. (Doc. No. 10-3, p. 15; 10-10, p. 10; 10-11, p. 21.)

After this hearing, the ALJ considered whether Plaintiff was disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (Doc. No. 10-3, p. 12.) In working through the five-step sequential process, the ALJ made the following determinations:

(1) Plaintiff did not perform substantial gainful activity after July 15, 2017. (Doc. No. 10-3, pp. 14–15.)

(2) Plaintiff had severe impairments that include lumbar degenerative disc disease, diabetes mellitus with polyneuropathy, obesity and inflammatory arthritis pursuant to 20 CFR 404.1520(c) and 416.920(c). *Id.* at 15–17.

(3) Plaintiff did not have an impairment or combination of impairments of listing level severity pursuant to 20 C.F.R. 404, Subpart P, Appendix 1. *Id.* at 17–18.

(4) Plaintiff had the residual functional capacity (RFC) to perform light work pursuant to 20 C.F.R. §§ 404.1567(b) and 416.967(b)[2]—limited to performing only

---

[2] These regulations both state:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567 and 416.967.

      occasional[3] stooping, kneeling, and crawling and to frequent[4] handling and fingering. (Doc. No. 10-3, pp. 18–24.)

(5) Plaintiff was capable of performing past relevant work as an administrative assistant because this work did not require performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 24–26.

The fifth step finding came from vocational expert testimony, in which the vocational expert was asked to consider a hypothetical individual of claimant's age, education, past work experience, and RFC. (Doc. No. 10-3, pp. 25–26.) The ALJ asked the vocational expert if such an individual could perform Plaintiff's past relevant work. *Id.* The vocational expert testified that such a hypothetical individual would be able to perform Plaintiff's past relevant work as generally performed. *Id.* The ALJ also determined that Plaintiff could perform other work— limited to occasional handling and fingering. *Id.* at 26. Accordingly, the ALJ determined Plaintiff had not been under a disability, as defined by the Social Security Act, from June 15, 2017, through the date of the ALJ's decision on August 23, 2021. *Id.*

### E. Discussion.

#### *1. The ALJ did not improperly substitute her own medical judgment to determine Plaintiff's ability for handling and fingering.*

Plaintiff alleges that the ALJ improperly substituted her own opinion regarding Plaintiff's ability to handle and finger bilaterally in a work setting. *See* Doc. No. 12. Plaintiff acknowledges that the ALJ correctly determined that evidence presented at the hearing demonstrates the need for limitations in handling and fingering; however, Plaintiff argues that

---

[3] "Occasionally" for purposes of Social Security disability determinations means from very little up to one-third of the time, depending on the particular job. *See* Social Security Ruling (SSR) 83-14, 1983 WL 31254, at *2 (S.S.A. Jan. 1, 1983).

[4] "'Frequent' for purposes of Social Security disability determinations means occurring from one-third to two-thirds of the workdays." *Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *4 (W.D. Tex. June 3, 2021) (citing SSR 83-14, 1983 WL 31254, at *2).

ALJ exceeded her qualification by determining that Plaintiff can handle frequently, or occasionally, or at what level she can perform these activities. *Id.* at 10. Further, Plaintiff contends that the ALJ should not have rejected the opinion of the treating nurse practitioner, which was the only medical source who provided information regarding the extent and severity of Plaintiff's functional limitations. *Id.* Plaintiff urges that, by rejecting the medical opinions of Family Nurse Practitioner (FNP) Black and the state agency consultants, the ALJ had no remaining medical evidence on which to rely in making a frequency limitation decision. *Id.* at 9–10.

The Commissioner argues that the ALJ did not reject the opinions of FNP Black or the state agency medical consultants. (Doc. No. 14, pp. 9, 13–15.) Instead, the Commissioner maintains, the ALJ specified what parts of the medical opinions she found unpersuasive and adequately followed the regulations in interpreting the evidence of the Plaintiff's testimony and the remaining persuasive medical evidence. *See id.*

Federal regulations and caselaw used to require an ALJ to give controlling weight to a treating physician's opinion; however, this is no longer the case. "For claims filed after March 27, 2017, an ALJ instead considers a list of factors in determining what weight, if any, to give a medical opinion." *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (*comparing* 20 C.F.R. § 404.1527 (2016) *with* 20 C.F.R. § 404.1520c). In other words, the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Plaintiff initiated her case on April 1, 2020. (Doc. No. 10-3, p. 12.) Therefore, the new rule applies.

Accordingly, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Importantly, "[a]n ALJ must articulate how [they] considered the supportability and consistency factors for a medical opinion . . . in [their] determination." *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0055-BU, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020) (citing § 404.1520c(b)(2)).

As to supportability, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency means that the more consistent a medical opinion or prior administrative finding is, the more persuasive the medical finding will be. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). An adequate explanation of supportability and consistency is one that "enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett v. Kijakazi*, 2021 WL 5545233, at *4 (quoting *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)).

### *2. The ALJ did not err in her evaluation of FNP Black's medical opinions.*

Plaintiff argues that the ALJ contradicts herself by finding "no objective evidence of complete incapacitation of Plaintiff's hands" when FNP Black's February 19, 2021 progress notes included an inability to flex and extend the fingers bilaterally. (Doc. No. 10-3, p. 24; Doc. No. 10-15, p. 49.) The Commissioner, meanwhile, argues that the February 19 progress note

9 / 18

does not establish that Plaintiff had manipulative limitations beyond those the ALJ specified, that lasted or expected to last a duration of twelve months.  (Doc. No. 14, p. 13.)

The opinion of a nurse practitioner is not entitled to special weight or deference.  20 C.F.R. §§ 404.1520c, 416.920c.  And, opinions based on checkmark forms without further explanation may be discounted.  *See DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017); *Tobin v. Astrue*, 10-1519, 2012 WL 124441 at *12 (E.D. Mo. Jan. 17, 2012) ("[A] treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence.").

In addressing FNP Black's opinion, the ALJ stated:

> [I]t appears that FNP Black completed a majority of this form with specific reports from the claimant rather than her objective evaluation of the claimant. Progress notes of her evaluations of the claimant up to that point do not support the claimant's subjective statements.  These notes also do not support the vague statements of "multiple variable" made by FNP Black.

(Doc. No. 10-3, p. 24.)  The ALJ considered FNP Black's Medical Opinions from July 16, 2020, and July 17, 2021.  *Id.*  The ALJ found the July 16, 2020 opinion to be based mostly on Plaintiff's own reports, as opposed to FNP Black's objective evaluation of Plaintiff.  *Id.*  Further, the ALJ found the July 17, 2021 opinion to be unpersuasive because it lacked objective support in the record.  *Id.*  The ALJ explained that FNP Black's progress notes did not reflect that Plaintiff ambulated with cautious gait or that FNP Black had even recommended Plaintiff use an assistive device for ambulation, regardless of Plaintiff's "reported inability to grip a cane." *Id.* The ALJ also noted that FNP Black's own records indicated that Plaintiff was actually only diagnosed with unspecified joint arthralgia and did not provide or recommend treatment consistent with the checkmark limitations on the opinion form. (Doc. No. 10-3, p. 24; 10-15, pp. 47, 63–64.)  The ALJ noted that while the June 17, 2021 record continued to show Plaintiff's

swelling in her thumbs and hands, there was no evidence of complete incapacitation of her hands. (Doc. No. 10-3, p. 24.)

The ALJ also found that Plaintiff's testimony concerning her ability to close her hands or grasp objects was not supported by medical evidence in the record. *Id.* Moreover, the ALJ provided her explanation of inconsistency between FNP Black's medical opinions, the progress notes, and Plaintiff's statements both contained within the progress notes and during the hearing. The ALJ expressly considered Plaintiff's inability to flex and extend her fingers bilaterally and Plaintiff's swelling and tenderness to palpation in February 2021. *Id.* at 21, 23. However, the ALJ noted that there was no documentation that Plaintiff could not make a fist or use her hands for lifting and carrying. *Id.* In support of her findings, the ALJ pointed to the March 18, 2021 follow-up, in which Plaintiff's steroid treatment had relieved hand pain and swelling (though not completely), and that Plaintiff had slight improvement of bilateral hand swelling. (Doc. No. 10-3, p. 21; Doc. No. 15, pp. 59, 63–64.) Particularly, the ALJ notes "[C]laimant's lumbar degenerative disc disease, diabetes mellitus with polyneuropathy, obesity and inflammatory arthritis have been considered as reflected by a limitation of the claimant to less than a full range of light work." (Doc. No. 10-3, p. 24.) And the evidence does not establish that Plaintiff had additional manipulative limitations lasting or expected to last a duration of 12 months. *See* 20 C.F.R. §§ 404.1509, 416.909 (duration requirement for an impairment to be considered disabling).

In sum, the ALJ considered all medical opinions and prior administrative medical findings, using the relevant factors, and was not required to give controlling weight to FNP Black's opinions. The record shows that the February 19, 2021 progress note was not the most recent development in Plaintiff's medical record, and as previously mentioned, the March 18,

11 / 18

2021 follow-up indicated improvement in the pain and swelling of Plaintiff's hand. (Doc. No. 10-15, p. 59.) Accordingly, the ALJ did not err in her evaluation of FNP Black's opinions.

### *3. The ALJ did not err in her evaluation of the opinions by state agency consultants.*

Plaintiff contends that the ALJ did not properly find persuasive the opinions of the state agency medical consultants when additional evidence presented may have changed their opinions as to Plaintiff's RFC. (Doc. No. 12, pp. 2, 3, 11–12.) Specifically, Plaintiff argues that because the state agency medical consultants rendered their opinions prior to the additional findings of Plaintiff's limitations in the use of her upper extremities, it is reasonable to assume that the consultant's previous findings regarding Plaintiff's ability to do light work would have changed. *Id.* at 12. In support, Plaintiff cites to *Brister v. Apfel*, 993 F. Supp. 574, 578 n.2 (S.D. Tex. 1998)). *Id.* The Commissioner counters that the ALJ did not reject the findings of the state agency consultants, that the ALJ complied with the applicable regulations in determining the persuasiveness of the opinions, and that *Brister* does not apply to the facts at issue in this case. (Doc. No. 14, pp. 9–10.)

Importantly, "[an] ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citations omitted). However, "[a] consultative examination is required to develop a 'full and fair record' only if 'the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision.'" *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (citing *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (quoting *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)).

> In addressing the opinion of the state agency consultants, the ALJ stated:
>
> The[] findings [of the state agency medical consultants] are generally persuasive, as they are consistent with their review of the evidence available to them at the time of such review. Additional evidence received at the hearing level, however, supports additional limitations on the claimant's ability to handle and finger (Exhibits 11F and 12F).

(Doc. No. 10-3, p. 24.)

Plaintiff cites a footnote in *Brister* that states, "It is clear that when additional medical evidence is received that in the opinion of the ALJ may change the State agency medical or psychological consultant's findings, an updated medical opinion regarding disability is required." *See* 993 F. Supp. at 578 n.2 (emphasis deleted) (citing SSR 96–6p); Doc. No. 12, p. 12; Doc. No. 15, p. 2-3. *Brister* is inapplicable. Plaintiff's citation is out-of-context dicta. This footnote is citing to SSR 96–6p, which requires an ALJ to obtain "updated medical opinion from a medical expert [w]hen additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Burns v. Astrue*, No. 4:12-CV-3435, 2015 WL 136558, at *14 (S.D. Tex. Jan. 9, 2015) (original emphasis omitted) (internal quotation marks omitted) (quoting *Akah v. Colvin,* No. No. H–13–CV–2415, 2014 WL 4929284, at *8 (S.D. Tex. Oct. 1, 2014)). Here, there is no step three issue of medical equivalence to a listing.

Plaintiff improperly conflates the ALJ's determination that Plaintiff has manipulative limitations with new medical evidence Plaintiff submitted that the State agency should have been given the opportunity to consider. *See Holter v. Berryhill*, No. 4:16-CV-03172, 2017 WL 7803869, at *9 (S.D. Tex. Sept. 29, 2017). The ALJ did not state that additional evidence would change the opinion of the state agency medical consultants regarding Plaintiff's status as not

disabled; rather, the ALJ stated that the additional evidence would support additional manipulative limitations. (Doc. No. 10-3, p. 24.) As shown by the vocational expert's testimony, this additional evidence showing that Plaintiff has some degree of manipulative limitation would not change the opinion of the state agency consultants that Plaintiff is not disabled. *See infra* Section E.4. And no additional evidence was necessary for the ALJ to make her determination that Plaintiff was not disabled. Further, the ALJ appropriately explained why she found the opinions of the state agency consultants generally persuasive given their consistency and supportability with the evidence, with the exception of the added manipulative limitation. *See Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018) (where the ALJ based their conclusion on medical information showing the plaintiff likely had greater limitations than the medical consultant suggested).

Therefore, the ALJ did not err in her evaluation of the opinions by state agency consultants.

### *4. The remaining persuasive medical record provided substantial evidence that supports the ALJ's RFC and disability determinations.*

Plaintiff argues the ALJ rejected or discounted most of the medical opinion evidence regarding Plaintiff's ability to handle and finger and then came to her own conclusion as to the level of Plaintiff's limitation, in violation of the regulations. (Doc. No. 12, pp. 9–10.) Plaintiff also argues the ALJ erred by failing to develop the record more fully given the lack of evidence demonstrating Plaintiff's ability to use her hands in the workplace. *Id.* at 11–12. The Commissioner argues substantial evidence supported the ALJ's finding that Plaintiff is not disabled, regardless of the degree of Plaintiff's manipulative limitation. (Doc. No. 14, pp. 15–16.)

The Court weighs four elements to determine whether there is substantial evidence of disability: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (1991)). In evaluating a plaintiff's claims of disabling pain to determine the resulting limitations on her ability to work, the ALJ must follow the requirements set forth in 20 C.F.R. §§ 404.1529, 416.929. According to this regulation, the ALJ must first determine that the plaintiff has "a medical impairment(s) . . . [that] could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529, 416.929. Next, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms, considering "all of the available evidence from [the plaintiff's] medical sources and nonmedical sources about how [the plaintiff's] symptoms affect [them]." *Id.* §§ 404.1529(c), 416.929(c). Other factors relevant to the ALJ's determination of the plaintiff's symptoms include: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms, among many other factors. *Id.* §§ 404.1529(c)(3), 416.929(c)(3). The ALJ is not required to incorporate limitations in the RFC that he or she does not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (*per curiam*). "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (*per curiam*) (citations omitted).

The ALJ's responsibility is to "interpret" the medical evidence to determine capacity to work. *Lasher v. Berryhill*, No. A-17-CV-464 AWA, 2018 WL 4560215, at *3 (W.D. Tex. Sept.

21, 2018) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)).  For a plaintiff to show the ALJ erred in this determination, "the plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ, not only that some conflict might appear to exist between a claimant's purported symptoms and the RFC."  *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019), *adopted sub nom. Crista B. v. Saul*, No. 1:18-CV-042-C-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019). Even if the court determines the evidence "preponderates in [the claimant's] favor," the court must still affirm the Commissioner's findings "unless [it finds] that there is not substantial evidence to support the ALJ's findings."  *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton v. Schweiker,* 697 F.2d 590, 592 (5th Cir.1983); *Olson v. Schweiker,* 663 F.2d 593, 595 (5th Cir.1981)).

Social security cases supporting remand demonstrate instances in which the ALJ discounts *all* of the available medical evidence before making an unsupported opinion as to the limitations presented by the applicant's medical conditions and where this error prejudiced the plaintiff.  *See*, *e.g., Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (unpublished); *Gonzalez v. Kijakazi*, No. CV 1:21-40, 2022 WL 317679, at *8 (S.D. Tex. Jan. 6, 2022) (Morgan, M.J.), *adopted*, No. 1:21-CV-040, 2022 WL 313907 (S.D. Tex. Feb. 2, 2022); *Ramos v. Saul*, No. CV 1:19-109, 2020 WL 5097160, at *10 (S.D. Tex. July 29, 2020) (Morgan, M.J.), *adopted*, No. 1:19-CV-109, 2020 WL 5097066 (S.D. Tex. Aug. 28, 2020).

In contrast, here, after considering the persuasiveness of the opinions of FNP Black and the state agency consultants, the ALJ based her decision on the remaining medical evidence about Plaintiff's ability to handle and finger.  (Doc. No. 10-3, pp. 19–24, 26.)  Further, the ALJ relied on the vocational expert's testimony.  The vocational expert stated that Plaintiff, with a

manipulative limitation of frequent handling and fingering, could perform past relevant work. *Id.* at 52. Yet, the vocational expert also stated that Plaintiff would not be able to perform her past relevant work with a manipulative limitation of *occasional* handling and fingering. *Id.* at 53. However, with a manipulative limitation of occasional handling and fingering, Plaintiff could still perform other work in the national economy, namely furniture rental clerk (DOT 295.357–019, approximately 90,000 jobs in national economy) or counter clerk (DOT 249.366–010, approximately 2,200 jobs in national economy). *See* Doc. No. 10-3, pp. 53–54; *DICOT* 249.366–010, 1991 WL 672323; *DICOT* 295.357–018, 1991 WL 672589 (occupations requiring handling and fingering occasionally (exists up to one-third of the time)). In other words, regardless of the level of limitation supported by the available evidence, Plaintiff would still have been found to be able to perform light work and still would not have been considered disabled.

      In sum, the ALJ appropriately relied on FNP Black's progress notes, Plaintiff's testimony, and advice from the vocational expert in interpreting the medical evidence. *See id*; *Taylor*, 706 F.3d at 603 ("What [the plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.") The ALJ based her RFC and disability decisions upon substantial evidence in a sufficiently developed record, and she did not err in declining to order further development of the record. Therefore, substantial evidence supports the ALJ's RFC finding, including that Plaintiff has manipulative limitations, and the ALJ's disability determination.

    **F.  *Conclusion and recommendation.***

      After review of the parties' briefing, the record, and relevant law, and for the reasons discussed above, the undersigned concludes that the Commissioner applied the proper legal

standard in evaluating the medical opinions, determining Plaintiff's RFC, and finding Plaintiff not disabled, and the Commissioner's decision was supported by substantial evidence. The undersigned therefore recommends the decision of the Commissioner be affirmed and this case be dismissed.

### G. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, and the United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on October 19, 2022.

MITCHEL NEUROCK
United States Magistrate Judge